UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION, as RECEIVER FOR
GULFSOUTH PRIVATE BANK,

    Plaintiff/Counter Defendant,

v.                                               Case No. 3:12cv548-MCR/EMT

WILLIAM L. AMOS, and
INNOVATION TREND SETTERS OF
AMERICA LLC,

    Defendants.
_____/

WILLIAM L. AMOS,

    Counter Plaintiff/Third-Party Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, as RECEIVER FOR
GULFSOUTH PRIVATE BANK,

    Counter Defendant,

and RODERIC M. WRIGHT,

    Third-Party Defendant.
_____

**RODERIC WRIGHT and BARBARA WRIGHT;
ZTF FAMILY, LP; AMT, LLC; and STEPHEN
BUNYARD as MANAGING PARTNER of
ZTF FAMILY, LP AND AMT, LLC,**

    Counter Plaintiffs/ Third-Party Plaintiffs,

v.

**WILLIAM L. AMOS,**

    Counter Defendant/Third-Party Defendant.
_____/

## ORDER

    This case is scheduled for a pretrial conference on January 22, 2016, and trial beginning February 8, 2016. Plaintiff Federal Deposit Insurance Corporation as Receiver for GulfSouth Private Bank ("FDIC-R") has filed four Motions in Limine based on potential evidence that the FDIC-R argues is not relevant. Relevant evidence includes evidence having "any tendency to make a fact more or less probable" than it otherwise would be and "is of consequence in determining the action." Fed. R. Evid. 401; *see also United States v. Terzado-Madruga*, 897 F.2d 1099, 1117 (11th Cir. 1990) (district court has broad discretion to admit evidence with "any tendency to prove or disprove a fact in issue"). Unless the evidence is clearly inadmissible, evidentiary rulings are best determined during trial "so that questions of foundation,

Case No. 3:12cv548-MCR/EMT

relevancy, and potential prejudice may be resolved in proper context."[1]  *See United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010) (stating evidence should be excluded in limine only when it is "clearly inadmissible on all potential grounds").

The only remaining issue for trial between the FDIC-R and the Defendants, Innovative Trend Setters of America, LLC ("ITSA") and William L. Amos, is the amount due on the Notes (to be determined by the jury) and on the Continuing Guaranty (to be determined by the Court).  The Complaint originally also included a count of foreclosure of real property that secured the ITSA Note, but during this litigation, the property sold in a short sale, arm's length transaction, and the FDIC-R voluntarily dismissed the foreclosure count.  The parties' Short Sale Agreement reserved existing rights and defenses related to this litigation and agreed that the payment would be credited against the amount due on the ITSA Note.

Amos and ITSA have indicated they intend to show that the property's fair market value was greater than the purchase price in the short sale and argue they are entitled to have that greater value credited against their obligations on the ITSA Note.

---

[1] Additionally, as with any interlocutory order, the district judge always remains free, in the exercise of sound judicial discretion, to alter a previously entered ruling on a motion in limine. *Luce v. United States*, 469 U.S. 38, 41 (1984).

Case No. 3:12cv548-MCR/EMT

The FDIC-R argues that any evidence or testimony attempting to establish an alternate fair market value for the real property should be excluded as irrelevant because the short sale was an arm's length transaction, not a foreclosure sale, and the price was not shockingly low.[2]  *See Lloyd v. Cannon*, 399 So. 2d 1095 (Fla. 1st DCA 1981); *Flagship State Bank of Jacksonville v. Drew Equipment Co.*, 392 So.2d 609, 612-13 (Fla. 5th DCA 1981) (stating deficiency judgment cannot be based on opinion evidence that the fair market value is greater than the price paid by a third-party purchaser at a public sale where there is no fraud, the price was not "shockingly inadequate" and there was no suggestion of a relationship between the mortgagee and the purchasers).  Amos and ITSA cite no legal authority permitting them to establish a fair market value different from the short sale price in this case.  Instead, they argue that the Short Sale Agreement expressly created a contractual right for them to establish an alternate fair market value, as if the property had been sold in foreclosure.

---

[2] "As a matter of law, the bid price at a foreclosure sale is not conclusive as to the market value of the property in a subsequent law action for judgment on the note." *R.K. Cooper Constr. Co. v. Fulton*, 216 So. 2d 11 (Fla. 1968); *see also* Fla. Stat. 702.06.

Case No. 3:12cv548-MCR/EMT

Having fully reviewed the matter, the Court disagrees with Amos and ITSA's reading of the agreement.[3] The mortgaged property sold for $1,825,000, and the closing statement reflected a cash payment of $1,712,099.03. ITSA and Amos rely on a clause within Paragraph 13 of the Short Sale Agreement, titled <u>Exercise of Existing Rights</u>, stating that ITSA and Amos "reserve and do not waive any defenses in the Litigation . . . to include any challenge to the validity of any guaranty and shall have the right to establish a credit against the Amount Due relating to the fair market value of the property [on the date of the short sale] as if the FDIC-R had proceeded with a foreclosure." Immediately thereafter, however, in the next sentence of the same paragraph, it stated that the "FDIC-R disagrees with and reserves *the right to contest any and all issues reserved* by [ITSA and Amos] and to raise *any* legal or equitable rights or remedies it may have." ECF No. 392-1, para. 13 (emphasis added).

In arguing that this paragraph establishes a contractual right to establish an alternate fair market value, ITSA and Amos effectively urge the Court to consider one

---

[3] The FDIC-R asserts that the Court already decided this issue. Although it was briefly considered in a prior Order, ECF No. 238, denying ITSA's motion to disclose an appraisal expert out of time, where the Court commented in a footnote that ITSA had not shown any legal basis for allowing it to establish a credit in an amount different from the arm's length sales price, the Court does not consider that prior Order as conclusive on the contract interpretation issue now raised.

phrase out of context and in isolation, which well-accepted principles of contract interpretation will not permit. Where the plain language of a contract is clear and unambiguous, the Court may not look beyond its four corners to define the terms or explain the parties' intent. *See NCP Lake Power, Inc. v. Florida Power Corp.*, 781 So. 2d 531, 536 (Fla. 5th DCA 2001). It is improper to isolate a single term or phrase when construing the meaning of a contract; instead, the Court must make "a reasonable interpretation of the language in the context of the entire agreement." *Herbst v. Herbst*, 153 So. 3d 290, 292 (Fla. 2d DCA 2014); *see also Retreat at Port of Islands, LLC v. Port of Islands Resort Hotel Condo. Ass'n*, 2015 WL 6777223, at *2 (Fla. 2d DCA 2015) (requiring courts to give effect to all of a contract's provisions). Moreover, "a party is bound by the language it adopts in an agreement, no matter how disadvantageous that language later proves to be." *Doty v. Bryson*, 154 So. 3d 457, 460 (Fla. 5th DCA 2015) (internal marks omitted). Paragraph 13 viewed as a whole makes it abundantly clear that the parties disagreed. There was no meeting of the minds on any issues reserved by ITSA and Amos; the asserted right to establish fair market value is contradicted by the plain language of the very next sentence, which unambiguously shows that the FDIC-R did *not* agree.

Even if the Short Sale Agreement could be construed as creating a contractual right for ITSA and Amos to establish an alternate fair market value, there is no evidence suggesting a reasonable basis for admitting such evidence. Nothing suggests the arm's length transaction was unreasonably low or not reflective of fair market value at the time. ITSA and Amos have no expert and no appraisal from the date of the short sale. Amos argues that Florida law permits him, as owner and ITSA corporate representative, to testify as to the property's value without qualifying as an expert. *See Hill v. Marion Cnty.*, 238 So. 2d 163, 166 (Fla. 1st DCA 1970) (stating an owner's "opinion testimony was admissible under the rule established in Florida that an owner of property may testify as to its value, although not qualified as an expert"); *Reliance Ins. Co. v. Pro-Tech Conditioning & Heating*, 866 So. 2d 700, 701 (Fla. 5th DCA 2003) (stating "expert testimony is not required when a corporate representative is qualified to testify"). While Florida law permits an owner to testify about his property's value, "the property owner's competence to testify derives not from title, but rather from the fact that ordinarily, an owner knows the property intimately and is familiar with its value." *Reliance Ins. Co.*, 866 So. 2d at 702. Likewise, a the rule contemplates that a corporate representative may be qualified to testify to property value based on experience, management of corporate affairs, and

Case No. 3:12cv548-MCR/EMT

knowledge of the relevant value of the property.  *Id.*  A basis of knowledge is required for either an owner or a corporate representative to testify as to property value.  Amos has submitted no affidavit, deposition testimony, or proffer showing that he is sufficiently qualified as a corporate representative with sufficient knowledge or experience regarding this property to testify as to its value on the date of the short sale in July 2013.  His response to the motion in limine contains no factual basis for such a finding, and in fact, the response shows just the opposite by quoting Amos's own deposition testimony conceding that he did not know the market and did not live there.

Accordingly, ITSA and Amos have not shown a legal basis for disputing the arm's length sales price in this instance, and even if the contract could be construed in their favor, they have not shown that Amos is qualified to offer lay opinion testimony on the property's fair market value on the date of the short sale in July 2013.  Therefore, the Court will exclude evidence of fair market value that differs from the amount of the short sale price and grant the FDIC-R's First, Third, and Fourth Motions in Limine.[4]

---

[4] Also, any suggestion by the parties that there is no need for a trial to determine the amount due if the Court finds that the short sale price is the fair market value overlooks the fact that ITSA and Amos challenged the credibility of the FDIC-R's affiant at summary judgment. If, in light of this ruling, the parties are willing to stipulate to the amounts due on the Notes and Guaranty, they should

Case No. 3:12cv548-MCR/EMT

As to the FDIC-R's Second Motion in Limine, which is not opposed, the Court agrees that any evidence of fraud is irrelevant and not admissible in the trial between the FDIC-R and ITSA and Amos on the Notes and Continuing Guaranty.

Accordingly:

1. FDIC-R's First Motion in Limine Regarding Valuation of Real Property Evidence, ECF No. 392, is **GRANTED**, and FDIC-R's Motion for Leave to Reply, ECF No. 427, is **DENIED**.

2. FDIC-R's Second Motion in Limine Regarding Evidence Relating to Fraud, ECF No. 393, is **GRANTED**.

3. FDIC-R's Third Motion in Limine Regarding Witnesses and Exhibits Not Relevant to the Portion of the Jury Trial on the Claims of the FDIC-R, ECF No. 394, is **GRANTED**.

4. FDIC-R's Fourth Motion in Limine Regarding Purported Expert Testimony, ECF No. 395, is **GRANTED**.

**DONE AND ORDERED** this 20th day of January, 2016.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

promptly notify the Court.

Case No. 3:12cv548-MCR/EMT