IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for GULFSOUTH PRIVATE BANK,
     Plaintiff,

vs.                           Case No.: 3:12cv548/MCR/EMT

WILLIAM L. AMOS and INNOVATION
TREND SETTERS OF AMERICA, LLC, et al.,
     Defendants.
_____/

## SECOND REPORT AND RECOMMENDATION

     This cause is before the court upon on several post-judgment matters including writs of garnishment, answers thereto, motions to dissolve such writs, and related claims of exemption and responsive filings, all of which were referred to the undersigned for further proceedings and the preparation of a Report and Recommendation regarding same (*see* ECF No. 578).[1]

I.     BACKGROUND

     The above-styled case was bifurcated for trial. First, in February 2016 the Federal Deposit Insurance Corporation, as Receiver for GulfSouth Private Bank

---

[1] Additional matters have arisen since the referral of the above-noted matters, which are presently under advisement by the undersigned (*see, e.g.*, ECF Nos. 660–665).

("FDIC-R"), obtained a jury verdict against Innovation Trend Setters of America, LLC ("ITSA") on a promissory note in the amount of $2,983,942.67, and a verdict against Williams L. Amos ("Amos" or "Mr. Amos") on a promissory note in the amount of $239,558.03.  Then, as a non-jury portion of that trial, the district court determined that Mr. Amos was also liable for the amount of the ITSA promissory note based on his personal guaranty.  Thus, in total, Mr. Amos was found liable to the FDIC-R for a sum in the amount of $3,223,500.70.  Final judgments were entered based on the jury's verdict and the district court's determination (*see* ECF Nos. 480, 481), and the judgments were certified for appeal (*see* ECF No. 567).[2]  Amos filed an appeal, and the FDIC-R instituted post-judgment collection proceedings.

On March 18, 2016, the FDIC-R filed notices indicating that on the same day it had sent via first class U.S. Mail to Robert O. Beasley, Mr. Amos' attorney, documents related to writs of garnishment served upon various entities including UBS Bank USA, Inc. ("UBS Bank") (ECF No. 522), UBS Financial Services Inc. ("UBS Fin'l") (ECF No. 523), and American Family Life Assurance Company of

---

[2] Also in February 2016, the same jury heard and determined Amos' claims of fraud against Roderic Wright and claims of Wright and others against Amos.  The jury returned a verdict against Wright in the amount of both Amos' existing liability on the ITSA note and his personal note ($3,223,501 together) plus "other" fraud damages in the amount of $375,000.

Columbus, Amos' employer (ECF No. 526).  The FDIC-R filed a similar notice as to Columbus Bank & Trust ("CB&T") on April 19, 2016 (ECF No. 560).[3]  The writs of garnishment put Mr. Amos on notice that wages, money, and other property belonging to him would be garnished to pay the court judgment against him in this case but that he may be able to keep or recover his wages pursuant to various exemptions, including an exception referred to as "head of family wages" (also referred to as a "head of household" or "head of household wages" exemption).

On March 22, 2016, a two-page document titled "Claim of Exemption and Request for Hearing" was filed in this case by Attorney Beasley (ECF No. 529).[4] Page one of the document is a check-off form, upon which the following selection is made, "I claim exemption[] from garnishment under the following categor[y] as checked:  1. Head of family wages. . . . .  I provide more than one-half of the support for a child or other dependent, have net earnings of more than $750 per week, but

---

[3] The FDIC-R also filed a like notice relating to a writ of garnishment served upon UBS Asset Management (Americas), Inc. (ECF No. 524), but no motion to dissolve this writ or any sort of objection to it has been filed.

[4] It is not evident from the two-page document itself that it was filed by Attorney Beasley, as his name appears nowhere on the document and it is not signed by Mr. Beasley.  It is only by looking "behind the document" at the CM/ECF Notice of Electronic filing ("NEF") that the court is able to determine that the document was filed by Mr. Beasley or a member of his firm (*see* ECF No. 529, NEF).

have not agreed in writing to have my wages garnished." (*id*. at 1).  Page two of the

document contains William Amos' signature, and an indication that his statements

were sworn to before a notary in the state of Georgia (*id*. at 2).  There is no indication

on the document as to which of the multiple writs of garnishment this exemption is

intended to apply (*see id*. at 1–2).

Next, on March 25, 2016, the FDIC-R filed a Verified Answer to Amos' Claim

of Exemption (ECF No. 530).  The FDIC-R argued that Amos expressly consented

to garnishment of his earnings by the plain language of the Continuing Guaranty

signed by Amos and attached to the FDIC-R's Verified Answer.  On April 14, 2016,

after a review of the relevant documents and filings, the district court issued an order

and noted therein as follows:

> In light of [Amos'] consent, the Court is inclined to find that no hearing
> is necessary and deny the exemption on the express consent contained
> within the Continuing Guaranty.  Defendant Amos has fourteen (14)
> days to respond and show cause why the exemption should not be
> denied on grounds of the written guaranty, and if a hearing is necessary,
> the matter will be referred to the assigned Magistrate Judge for a
> hearing.

(ECF No. 549 at 2–3).  In the same order, the district court specifically directed Mr.

Amos to "notify the Court within fourteen (14) days if a hearing is necessary on the

claimed exemption in light of the express language of the Continuing Guaranty granting consent to garnish his earnings" (*id*. at 4).

Fourteen days elapsed, and Amos filed nothing regarding the matter of the exemption. On May 3, 2016, after the fourteen-day deadline had passed, Amos filed a "Motion to Dissolve Writs of Garnishment," in which he seeks to dissolve the writs served upon UBS Bank and UBS Fin'l, in whole or part on the ground that the three accounts restricted pursuant to the writs are exempt because he is "the head of household, see Claim of Exemption Doc [529], and earnings directly traceable to wages are exempt from garnishment" (ECF No. 571 at 1–2). Amos then submitted additional filings in which he claims that the same head of household exemption applies to another writ of garnishment, and with respect to certain other writs, he asserts additional arguments as to why those writs should be dissolved. These filings include a motion to dissolve the writ of garnishment served upon CB&T (ECF No. 574, filed May 9, 2016)[5] and a memorandum in support of the motion to dissolve the writs served upon UBS Bank and UBS Fin'l (ECF No. 584, filed May 25, 2016).

---

[5] Non-parties Paladin Beach Investments, LLC, and Jennifer Amos, William Amos' wife, joined in the motion to dissolve the writ served upon CB&T (ECF No. 574). For the sake of simplicity, in this Report and Recommendation the undersigned refers to the motion as being filed by Mr. Amos alone.

On September 21, 2016, the undersigned issued a Preliminary Report and Recommendation (ECF No. 634), and based generally on the foregoing circumstances recommended that the district court make the following findings:

1.   That William L. Amos waived his right to have a hearing on the matter of the "head of household exemption" by failing to timely file a notice requesting such and by failing to timely show cause why the exemption should not be denied on grounds of the written guaranty (*see* ECF Nos. 529, 530, 549);

2.   That William L. Amos expressly consented to garnishment of his earnings by the plain language of the Continuing Guaranty signed by Amos and attached to the Verified Answer submitted by the FDIC-R (ECF No. 530); and

3.   That William L. Amos' memorandum in support of the motion to dissolve the writs of garnishment served upon UBS Bank and UBS Fin'l (ECF No. 584) be stricken from the record, as filed in violation of Local Rules 7.1(E) and 7.1(I) of the United States District Court for the Northern District of Florida.

On October 21, 2016, the district court adopted in full the Preliminary Report and Recommendation and made the three findings set forth above (ECF No. 653).

Now before the court are Amos' motions to dissolve the writs of garnishment served upon UBS Bank and UBS Fin'l (ECF No. 571) and CB&T (ECF No. 574), as

well as the FDIC-R's responses in opposition to those motions (ECF No. 577, 582, 589).[6]  Also pending are the FDIC-R's "Motion for Entry of Final Judgment of Garnishment Against Garnishee, UBS Financial Services Inc. and UBS Bank USA, Inc." (ECF No. 656) and the FDIC-R's "Motion for Entry of Final Judgment of Garnishment Against Garnishee, American Family Life Insurance Company of Columbus" (ECF No. 655).

## II.   DISCUSSION

### A.   The FDIC-R's "Motion for Entry of Final Judgment of Garnishment Against Garnishee, American Family Life Insurance Company of Columbus [("AFLAC")]" (ECF No. 655).

The undersigned addresses the FDIC-R's motion as to the AFLAC writ first, as it is easily disposed of.  The FDIC-R sought and obtained a continuing writ of garnishment against AFLAC, Amos' employer.  Following the initial service of this continuing writ of garnishment, Amos filed a claim of exemption based <u>only</u> on the contention that he is the head of household (*see* ECF No. 529).[7]

---

[6] As previously noted, Amos' memorandum in support of his motion regarding the writs served upon UBS Bank and UBS Fin'l (ECF No. 584) has been stricken from the record and thus will not be considered by the undersigned.

[7] As noted *supra*, neither Amos nor his counsel identified—anywhere on the "check-off form" filed at ECF No. 529—to which, or how many of, the many writs of garnishment the head of household exemption noted on the check-off form purportedly applied.   Nevertheless, given that Amos argued in subsequent filings that it applied to the writs at issue in the instant Report, the undersigned has liberally construed the filing at ECF No. 529 as applying to the same writs.

During the pendency of these proceedings, AFLAC has filed answers at regular intervals, identifying the amount of monies being withheld and either paid into this Court's registry or held by AFLAC[8] (*see* ECF Nos. 537, 558, 572, 588, 608, 626, 632, 635, 636, 650, 666, 668, 670).  In total, AFLAC has paid $29,904.24 as of the filing of this Report, exclusive of interest, into this Court's registry and was holding another $33,892.26 as of October 24, 2016, the date the FDIC-R filed the instant motion.  As discussed above, the district court has now definitively ruled on the head of household exemption and found that Amos waived his right to claim the exemption. The court also ruled that Amos expressly consented to a garnishment of his wages. Because Amos has asserted no other exemption and stated no other objection to the AFLAC garnishment, there is no just reason to delay the entry of a final judgment of garnishment against AFLAC regarding the payments that have been deposited into the registry of the court and withheld by AFLAC pursuant to its answers.

Additionally, beginning with its answer filed September 12, 2016 (ECF No. 632), AFLAC identified monthly payments in the total amount of $25,000.00 (two payments per month of $12,500 each) that it is making to the AFLAC Market

---

[8] At a hearing before the undersigned held August 4, 2016, the FDIC-R's attorney explained that AFLAC was holding certain funds and not disbursing the funds deposited into this court's registry directly to the FDIC-R because it was aware of the head of household exemption filed by Amos and that the issue of the exemption had not yet been resolved by the court.

Director Deferred Compensation Plan ("MDDCP"), which payments the FDIC-R contends ought to be included in the garnishment calculation (ECF No. 637).   The FDIC-R thus requests that the final judgment of garnishment include these payments to the MDDCP (*id*. at 4; *see also* ECF No. 655).[9]

Accordingly, it is the recommendation of the undersigned that future payments relating to the continuing writ of garnishment as to AFLAC be made payable to the FDIC-R, and delivered to its counsel, until the judgments against Amos are satisfied. Additionally, monthly payments in the total amount of $25,000.00 that AFLAC is making to the MDDCP should be included in the garnishment calculation.

    B.    Amos' "Motion to Dissolve Writs of Garnishment" as to UBS Financial Services Inc. and UBS Bank USA, Inc. (ECF No. 571)

        The FDIC-R's "Motion for Entry of Final Judgment of Garnishment Against Garnishee, UBS Financial Services Inc. and UBS Bank USA, Inc." (ECF No. 656)

The writs at issue in Amos' motion were served upon UBS Bank and UBS Fin'l in March 2016.   The answers to the writs indicate that three accounts were restricted pursuant to the writs:   Accounts Numbered XX-XXX25, DS-XXX95, and

---

[9] As of the filing of this Report, Amos has filed nothing with the court indicating that he opposes the FDIC-R's request to include in the final judgment of garnishment AFLAC's payments to the MDDCP (the FDIC-R included this request in at least two separate filings, namely, its filings at ECF Nos. 637 and 655 (filed September 27, 2016, and October 24, 2016, respectively).   Thus, Amos has had ample time to lodge an objection to the request but has not done so.

DS-XXX93 (*see, e.g.*, ECF Nos. 568, 569).  Amos now moves to dissolve the writs.

As explained below, the undersigned recommends that Amos' motion be denied.

First, Amos' motion fails to comply with the Local Rules of this court.  It lacks

a Certificate of Consultation, confirming that Amos, "the moving party[,] complied

with the attorney-conference requirement of Local Rule 7.1(B) and setting out the

results." N.D. Fla. Loc. R. 7.1(C) (eff. Nov. 24, 2015).  And it otherwise includes no

indication that an attorney conference occurred before Amos filed the motion.

Additionally, Amos failed to "file a supporting memorandum in the same document

with, or at the same time as, the motion," as required by Rule 7.1(E).  Amos' failure

to file a memorandum in accordance with the provisions of Rule 7.1(E) is alone a

sufficient ground to deny his motion.  *See* N.D. Fla. Loc. R. 7.1(H) ("The Court may

deny a moving party's motion if the party does not file a memorandum as required by

this rule.").

Second, even if the court were to consider the merits of the motion, the

arguments set forth therein fail to demonstrate entitlement to the relief Amos seeks.

He claims that the first account, No. XX-XXX25, is exempt only because he is the

head of household (ECF No. 571).  He has waived his right to assert this exemption,

so the argument clearly fails.  He contends that the second and third accounts, Nos.

DS-XXX95 and DS-XXX93, are also exempt because he is the head of household (an issue that warrants no further discussion) and additionally exempt because they are "trust account[s] for which Mr. Amos is not the primary beneficiary" (ECF No. 571). With respect to the latter contention, Amos makes no further arguments, includes no citation to legal statutes or authorities, attaches no documents or other support for the claimed exemption, and fails to even identify the name or number of additional beneficiaries on the trust accounts or provide any other information regarding those accounts.[10]   In short, Amos' motion is factually and legally insufficient and may alternatively be denied on this basis.[11]

> C.   Amos' "Motion to Dissolve Writ of Garnishment Columbus Bank & Trust [sic]" (ECF No. 574)

As with Amos' motion concerning the writ served upon the UBS institutions, the motion concerning the writ served upon CB&T fails to comply with Rules 7.1(B), 7.1(C), and 7.1(E) of this court, as it contains no Certificate of Consultation, no

---

[10]   In fact, his entire argument as to all three accounts consists of less than nine full lines of text (*see* ECF No. 571).

[11]   It is worth noting that Amos does not claim that the FDIC-R failed to comply with any statutory procedural requirements regarding the UBS writs, such as those regarding service or notice. It is also worth noting that the arguments set forth by the FDIC-R in the responses it filed in opposition to Amos' motion are well-written and persuasive, and they provide additional justification for denying Amos' motion (*see* ECF Nos. 577, 589).

indication that an attorney conference occurred or the results of any such conference, and no supporting memorandum, although it does include some minimal citation to legal authorities, specifically, two district court cases from the Middle District of Florida and one district court case from the Southern District of Florida (*see* ECF No. 574).[12]  Amos' failure to file the memorandum as required by Rule 7.1(E) is alone a sufficient ground to deny his motion.  N.D. Fla. Loc. R. 7.1(H).  Notwithstanding this and the other deficiencies, and albeit with some hesitation in light of the deficiencies, it is the recommendation of the undersigned that Amos' motion as to the CB&T writ <u>not</u> be denied due to his failure to file a supporting memorandum because, unlike the motion filed by Amos as to the UBS writs, the instant motion—bare-boned as it may be—contains some legal authority that supports the relief requested.  Thus, the undersigned will discuss the merits of  the factual and legal issues surrounding the CB&T writ.

---

[12] The court notes that the three district court cases cited by Amos had been previously cited by CB&T in its answer to the writ of garnishment, in noting that CB&T was in "good faith doubt" as to whether Amos' accounts and a safe-deposit box held at CB&T are subject to the writ (*compare* ECF No. 561 at 2–3, ¶ 3 *with* ECF No. 574 at 2, ¶ 5).  In fact, the parentheticals that follow Amos' case cites in the instant motion are verbatim to those included by CB&T in its answer (*id.*).  Thus, the need for Amos to have complied with the Local Rules by filing a memorandum in support of his motion was all the more important in this instance, because his bare-boned motion does not add anything to the information that was already before the court on the legal issue initially raised by CB&T in its answer.

In response to the writ of garnishment served upon it in mid-April 2016, CB&T restricted three bank accounts and a safe-deposit box.  CB&T has identified the accounts as Accounts Numbered xx1049, xx1843, and xx0838, and the safe-deposit box as a box that ends in the numbers 532 (*see, e.g.*, ECF No. 561).  In moving to dissolve the writ, Amos contends that the accounts and safe-deposit box are "outside the reach of the subject writ because they are located in the State of Georgia" (ECF No. 574 at 2, ¶ 5 (citing the three district court cases previously cited by CB&T in its answer (*see* n.12, *supra*))).  Amos then makes additional arguments as to each of the three accounts.  The undersigned will address the first argument only, as it is dispositive of Amos' motion.

Florida's procedure in aid of execution governs the instant dispute.  *See* Fed. R. Civ. P. 69(a).  Chapter 77 of the Florida Statutes prescribes the procedure for the issuance and enforcement of writs of garnishment.  Section 77.01 states, in pertinent part, that:

> Every person or entity who has sued to recover a debt or has recovered judgment in any court against any person or entity has a right to a writ of garnishment, in the manner hereinafter provided, to subject any debt due to defendant by a third person . . . and any tangible or intangible personal property of defendant in the possession or control of a third person.

Fla. Stat. § 77.01 (eff. Oct. 1, 2001).

To obtain a writ of garnishment after judgment, the party seeking such must file a motion stating the amount of the judgment, *see* Fla. Stat. § 77.03, as the FDIC-R did here.  Then, if the party meets the statutory requirements under Florida law, a writ may be obtained and served, as was done here upon CB&T.  Pursuant to Section 77.04, the garnishee, in this case CB&T, generally must then serve a timely answer; state whether indebtedness exists, and if so, in what amount and form; and provide other pertinent information regarding tangible and intangible personal property as detailed in the statute.  *See* Fla. Stat. § 77.04 (eff. July 1, 2013).

As previously noted, Amos seeks to dissolve the writ served upon CB&T because it is directed at bank accounts and a safe-deposit box located in the state of Georgia.  The Florida garnishment statutes contain no express territorial limitation on the location of the property within the garnishee's control.  As both Amos and CB&T note, however, in Stansell v. Revolutionary Armed Forces of Colombia (FARC), 149 F. Supp. 3d 1337, 1339 (M.D. Fla. 2015), the court concluded "that it lack[ed] subject matter jurisdiction to garnish any funds in any bank accounts located outside the State of Florida," and stated that "[a]ll of the funds at issue in the motions, memoranda, and writs now before the Court are held outside the State of Florida and, thus, are beyond the reach of a Florida writ of garnishment."  *Id*. (citing, among other

cases, Skulas v. Loiselle, No. 09-60096-CIV, 2010 WL 1790439, at *3 (S.D. Fla. Apr. 9,  2010) (dissolving a garnishment writ upon finding that "because the bank account at issue [wa]s located in Pennsylvania, the Court d[id] not have jurisdiction over it"), *report and recommendation adopted*, 2010 WL 1790433 (S.D. Fla. May 5, 2010); APR Energy, LLC v. Pakistan Power Res., LLC, No. 3:08-CV-961-J-25MCR, 2009 WL 425975, at *1–2 (M.D. Fla. Feb. 20, 2009) (concluding that court lacked jurisdiction to enter a prejudgment writ of garnishment to garnish a bank account located outside of Florida)).  A closer look at the decisions cited herein is helpful.

The earliest case, APR Energy, LLC, 2009 WL 425975, involved a motion to dissolve a prejudgment writ of garnishment. *Id*., at *1.  In dissolving that writ, which sought to garnish a bank account located in Oklahoma, the court reasoned that it was required to dissolve it because the court did not have jurisdiction over the bank account, stating "not only must the Court have personal jurisdiction over [the] Garnishee, but it must also have jurisdiction over the property to be garnished, in this case, the bank account." *Id*., at *5.  In Skulas, 2010 WL 1790439, after reviewing the relevant Florida statutory provisions relating to garnishment, the court simply stated that it found persuasive "the reasoning in *APR Energy* and finds that because the bank account at issue is located in Pennsylvania, the Court does not have jurisdiction over

it and the instant Writ of Garnishment [] should be dissolved." *Id.*, at *3.  The most

in-depth analysis is found in the latest of the decisions, <u>Stansell</u>, where the court

stated as follows:

> [A] garnishment proceeding "is not an action *in personam*, nor is it,
> strictly speaking, a proceeding *in rem*.  Partaking of the nature of both,
> it is frequently classified as a proceeding *quasi in rem*."  *U.S. Rubber
> Co. v. Poage*, 297 F.2d 670, 673 (5th Cir. 1962) (citations omitted).
> Because of the dual nature of a garnishment proceeding, courts sitting
> in this state have held that a court presiding over a writ of garnishment
> must not only have personal jurisdiction over the garnishee, but also
> jurisdiction over the property or "res" that is the subject of the writ of
> garnishment.  *See APR Energy, LLC v. Pakistan Power Resources, LLC*,
> 2009 WL 425975, at *2 (M.D. Fla. 2009); *see also, Harris v. City of
> Sarasota*, 132 Fla. 568, 181 So. 366, 369 (1938) (holding that "an action
> *quasi in rem* requires a seizure of property within the jurisdiction of the
> court or its equivalent."); *Dewind v. JP Morgan Chase & Co.*, 2011 WL
> 6755918, at *2 (N.D. Ga. 2011) (holding that in a quasi in rem action a
> district court does not have jurisdiction over the res when that property
> is not physically within the same state as the court) (citing *Hanson v.
> Denckla*, 357 U.S. 235, 249, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)).
> While personal jurisdiction may be waived, "in rem jurisdiction is a very
> special type of necessary judicial subject matter jurisdiction" under
> Florida law—one that cannot be waived.  *Center Capital Corp. v.
> Gulfstream Crane, LLC*, 2009 WL 4909430, at *7 (S.D. Fla. 2009)
> (internal quotation marks and citations omitted) (holding that "a party
> cannot waive *in rem* jurisdiction under Florida law, and a court
> proceeding pursuant to *in rem* jurisdiction must actually possess *in rem*
> jurisdiction over the property that is the subject of the matter").

<u>Stansell</u>, 149 F. Supp. 3d at 1339–40 (footnotes omitted).  The court went on to note

that the only two Florida federal courts to previously address the same question

dissolved writs served on bank accounts outside the state of Florida after concluding that they lacked jurisdiction over the property, and the Stansell court then did the same. *Id*. (citing APR Energy and Skulas). Although the plaintiffs in Stansell urged the court to conclude that the earlier federal cases had been wrongly decided, as the FDIC-R essentially does here, the Stansell court noted that neither decision had been overruled and that both cases are consistent with the Florida garnishment statutes and the rules of construction that apply in interpreting those statutes. *Id*. at 1340. With respect to rules of construction, the court pointed out that Florida law requires garnishment statutes to be "strictly construed." *Id*. (citing, among other cases, Gigliotti Contracting N., Inc. v. Traffic Control Prods. of N. Florida, Inc., 788 So. 2d 1013, 1016 (Fla. 2d DCA 2001); Williams v. Espirito Santo Bank of Florida, 656 So. 2d 212, 213 (Fla. 3d DCA 1995)). The court then concluded: "[N]othing in the language of the Florida garnishment statutes suggests that they were intended to have extraterritorial application. Interpreting a garnishment statute to apply to bank accounts located outside the state despite the absence of any explicit statutory language to that effect would violate this principle of strict construction." *Id*. (citations omitted).

It is thus clear that under Florida law that a court presiding over a writ of garnishment must not only have personal jurisdiction over the garnishee, but also jurisdiction over the property, or *res*, that is the subject of the writ.  *See, e.g.*, Stansell, 149 F. Supp. 3d at 1337.  The FDIC-R, while acknowledging the cases from the Southern and Middle Districts of Florida, argues, essentially, that those cases are based on outdated banking concepts and not modern-day realities, namely, that the exact monies deposited into a bank account do not physically remain where they were deposited.  Therefore, argues the FDIC-R, in reality the bank accounts at issue here are not actually "in" Georgia and, in fact, can be accessed by Amos in Florida (or anywhere in the world, for that matter) (*see* ECF No. 582 at 5–12).  The FDIC-R points out that CB&T is a division of Synovus Bank (*id.* (referencing ECF No. 561, CB&T's answer)) and that Synovus Bank has branches throughout the state of Florida, "from which upon information and belief Amos could use to access the funds identified in CB&T's answer to the writ of garnishment" (ECF No. 582 at 10).

Even if the court were to accept the FDIC-R's argument as to the intangible nature of Amos' bank accounts, the argument simply cannot extend to his safe-deposit box, which clearly is physically located in Georgia, and which has also been restricted pursuant to the same writ.  What is more, the FDIC-R's argument is—by

its own admission—contrary to the decisions of the other Florida federal courts who have ruled upon the issue now before this court.  Even though those decisions are not binding on this court, the undersigned finds them persuasive, and in particular the reasoning of the <u>Stansell</u> court.

In light of the foregoing, it is the recommendation of the undersigned that Amos' motion be granted, based on a finding that this court lacks jurisdiction over the bank accounts and safe-deposit box in Georgia that have been restricted pursuant to the writ of garnishment served upon CB&T.

However, it is also the recommendation of the undersigned that the existing writ remain in place for a period of twenty-one (21) days following the entry of an order adopting this Report, to enable the FDIC-R to institute such other proceedings as are necessary to garnish Amos' accounts and safe-deposit box, which are currently restricted by CB&T as a result of the writ, through the courts of Georgia or by other means.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the Motion for Entry of Final Judgment of Garnishment Against Garnishee, American Family Life Insurance Company of Columbus ("AFLAC"), filed

by Federal Deposit Insurance Corporation, as Receiver for GulfSouth Private Bank ("FDIC-R") (ECF No. 655) be **GRANTED**, and that the following relief be awarded:

      (a)    A Final Judgment of Garnishment be entered in favor of the FDIC-R and against AFLAC;

      (b)    The total amount of funds deposited by AFLAC and currently held in this Court's registry ($28,904.24, exclusive of interest, at the time of the issuance of the Report and Recommendation) be disbursed to the FDIC-R;

      (c)    AFLAC be required to pay over to the FDIC-R the total amount of funds it has withheld from Amos' earnings (which totaled $33,892.26 as of October 24, 2016, the date the FDIC-R filed the instant motion);

      (d)    All future payments by AFLAC pursuant to the continuing writ of garnishment be made payable to the Federal Deposit Insurance Corporation, as Receiver for GulfSouth Private Bank, and delivered to Theodore R. Howell, c/o Barron & Redding, P.A., 220 McKenzie Avenue, Panama City, FL 32401, until the judgments against William L. Amos are satisfied; and

      (e)    AFLAC's monthly payments totaling $25,000 to its Market Director Deferred Compensation Plan be included in the garnishment calculation and resulting payments.

2.     William L. Amos' "Motions to Dissolve Writs of Garnishment" as to UBS Financial Services Inc. and UBS Bank USA, Inc. (ECF No. 571) be **DENIED**.

3.     The FDIC-R's "Motion for Entry of Final Judgment of Garnishment Against Garnishee, UBS Financial Services Inc. and UBS Bank USA, Inc." (ECF No. 656) be **GRANTED**, and that the following relief be awarded:

(a)     A Final Judgment of Garnishment be entered in favor of the FDIC-R and against UBS Financial Services Inc.; and

(b)     A Final Judgment of Garnishment be entered in favor of the FDIC-R and against UBS Bank USA, Inc.

4.     William L. Amos' "Motion to Dissolve Writ of Garnishment Columbus Bank & Trust [("CB&T")]" (ECF No. 574) be **GRANTED** but that:

(a)     The existing writ of garnishment remain in place for a period of **TWENTY-ONE (21) DAYS** following the entry of an order adopting this Report;

(b)     During this **TWENTY-ONE (21) DAY** period, the three bank accounts and safe-deposit box identified in CB&T's answer (Accounts Numbered xx1049, xx1843, and xx0838, and the safe-deposit box ending in the numbers 532) remain restricted; and

(c)     Upon expiration of the **TWENTY-ONE (21) DAY** period, the

writ of garnishment served upon CB&T be **DISSOLVED** for lack of jurisdiction.

At Pensacola, Florida, this <u>10th</u> day of January 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**



## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**